IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MON B. RAI,<br><br>   Plaintiff,<br><br>v.<br><br>LINDNER USA, INC.; LINDNER GROUP SE; SMITH, GAMBRELL & RUSSELL, LLP,<br><br>   Defendants. | CIVIL ACTION FILE<br>NO. 1:25-CV-06904-VMC-JEM |

## ORDER

Pending before the Court is Plaintiff's application to proceed *in forma pauperis* (IFP). (Doc. 1.) For the reasons below, the application, (Doc. 1), is **GRANTED**. Further, Plaintiff's complaint against Defendants, (Doc. 1-1), survives frivolity review, and it **SHALL PROCEED** like any other civil action. Instructions directing service will be provided in a separate order.

### I. IFP APPLICATION

#### A. Standard

The Court "may authorize the commencement […] of any suit, action, or proceeding […] without payment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner [or non-

prisoner]¹ possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a). This section is intended to provide indigent litigants with meaningful access to courts. *Denton v. Hernandez*, 504 U.S. 25, 27 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *see also Attwood v. Singletary*, 105 F.3d 610, 612 (11th Cir. 1997) (§ 1915 is designed to ensure "that indigent persons will have equal access to the judicial system."). When considering an IFP application, the court's "only determination . . . is whether the statements in the affidavit satisfy the requirement of poverty." *Martinez*, 364 F.3d at 130 (internal quotes and citations omitted). An IFP application is sufficient "if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Id.*; *Thomas v. Chattahoochee Judicial Circuit*, 574 F. App'x 916, 917 (11th Cir. 2014) (Before denying an IFP application, the court must first compare the litigant's assets and liabilities "to determine whether he has satisfied the poverty requirement."). "Courts routinely look to household income and assets in gauging ability to pay, regardless of whether the plaintiff's spouse is or is not a party." *David v. Dep't of the Army*, No. 1:20-CV-01619-JPB, 2020 WL 9595479, at *2 (N.D. Ga. Apr. 21, 2020), report and recommendation adopted, 2020 WL 9595489 (N.D. Ga. May 12, 2020); *Sellers v. United States*, 881 F.2d 1061, 1063 (11th Cir.

---

¹ Although Congress used the word "prisoner" here, the affidavit requirement of § 1915(a)(1) applies to non-prisoner indigent litigants as well as prisoners. *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004) (citing *Haynes v. Scott*, 116 F.3d 137, 140 (5th Cir. 1997) and *Floyd v. United States Postal Serv.*, 105 F.3d 274, 275 (6th Cir. 1997)).

1989) ([t]he fact that the petitioner's funds are derived from family sources does not compel the conclusion that the filing fee is due to be waived").

It bears emphasizing that § 1915 creates no absolute right to proceed in civil actions without payment of costs. *Camp v. Oliver*, 798 F.2d 434, 437 (11th Cir. 1986); *Startti v. United States*, 415 F.2d 1115, 1116 (5th Cir. 1969).[2] Instead, the statute conveys a privilege to proceed to those litigants unable to pay costs without undue hardship when the action is not frivolous or malicious, and the "permission to so proceed is committed to the sound discretion of the court." *Camp*, 798 F.2d at 437; *Startti*, 415 F.2d at 1116. While the privilege of proceeding IFP does not require a litigant to demonstrate absolute destitution, "something more than mere statement and an affidavit that a man is 'poor' should be required before a claimant is allowed to proceed in forma pauperis." *Levy v. Federated Dep't Stores*, 607 F. Supp. 32, 34 (S.D. Fla. 1984) (quoting *Evensky v. Wright*, 45 F.R.D. 506, 507-08 (N.D. Miss. 1968)).

### B. Discussion

Here, Plaintiff states that his average monthly income from employment is $4,000. (Doc. 1 at 1-2, 5). He reports that he has $500 in a checking account, and that his only asset is a 2015 Toyota Camry, valued at $2,000. (*Id.* at 2-3). Plaintiff states that his expenses average $3,125 per month, as follows: $1,375 for

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

rent/mortgage; $400 for utilities; $450 for food; $200 for clothing; $150 for laundry/dry-cleaning; $200 for medical/dental expenses; $200 for transportation; and $150 for recreation. (*Id.* at 4-5). Plaintiff also states that he has credit card debt of $17,800 with Bank of America and $11,300 with Chase that require minimum monthly payments, as well as auto insurance monthly payments, though he did not include those monthly payment amounts with the other monthly expenses he lists. (*Id.*) The Court finds that, given Plaintiff's representations, Plaintiff qualifies for IFP treatment, and Plaintiff's application to proceed IFP, (Doc. 1), is **GRANTED**.

## II. FRIVOLITY REVIEW

### A. Standard

Upon finding that an IFP affidavit is "sufficient on its face to demonstrate economic eligibility," the Court must "then proceed to the question . . . of whether the asserted claim is frivolous." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) (alteration in original) (quoting *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976)). Under 28 U.S.C. § 1915(e), a court must dismiss an indigent litigant's complaint if the court determines that it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Libertad v. Massachusetts*, No. 1:21-CV-03888-SDG, 2022 WL 1136727, at *1 (N.D. Ga. Apr. 18, 2022). "A claim is frivolous if and only if it 'lacks an arguable basis either in law or in fact.'" *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). And a

plaintiff does not state a claim under § 1915(e)(2)(B)(ii) "when the facts as pleaded do not state a claim for relief that is 'plausible on its face.'" *Thompson v. Fernandez Rundle*, No. 10-10029, 2010 WL 3279158, at *2 (11th Cir. Aug. 20, 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 US. at 678. This plausibility standard is not a "probability requirement," but it requires more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (explaining that, although the Rule 8 pleading standard does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation").

      The Court's power to dismiss a claim for frivolity differs, and in some ways supersedes, the power to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Miller*, 541 F.3d at 1100 (citing *Neitzke*, 490 U.S. at 327). The purpose of frivolity review is to filter the lawsuits of non-paying litigants through a screening process that is functionally similar to the one created by the financial disincentives, which help deter the filing of frivolous lawsuits by paying litigants. *Cofield v. Alabama Pub. Serv. Comm'n*, 936 F.2d 512, 515 (11th Cir. 1991). Frivolity review eliminates far-fetched cases because, unlike Rule 12(b)(6) motions, a Court performing a frivolity review is not required to assume the truth of the allegations. *Cofield*, 936 F.2d at 515 (citing *Neitzke*, 490 U.S. at 327); *see also Miller*, 541 F.3d at 1100 (courts have the "unusual power to pierce

the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless").

In the event that a claim is arguable, but ultimately will be unsuccessful, however, it must be treated like claims brought by paying litigants and should survive frivolity review. *Cofield*, 936 F.2d at 515. Cases that lack an arguable basis in law or fact are those cases which are "indisputably meritless." *Cofield*, 936 F.2d at 515 (citing *Neitzke*, 490 U.S. at 327). Non-frivolous but weak cases should be dealt with on motions to dismiss and motions for summary judgment. *Cofield*, 936 F.2d at 515. Thus, a complaint may fail to state a claim under Rule 12(b)(6), yet not automatically be frivolous, and conversely, a claim capable of surviving a Rule 12(b)(6) motion may nevertheless be dismissed as frivolous because the factual allegations are so far-fetched or baseless. *Cofield*, 936 F.2d at 515 (citing *Neitzke*, 490 U.S. at 327). In other words, the fact that a claim survives a frivolity review does not mean that the claim ultimately has merit. *Murphy v. Warren*, No. 1:12-CV-3317-WSD, 2015 WL 363023, at *6 n.1 (N.D. Ga. Jan. 27, 2015) (noting that "the Court's initial frivolity screening review, which was undertaken before Defendants were served and appeared, does not preclude a subsequent deeper analysis of whether the Complaint states a claim with the assistance of fully-briefed motions under Rule 12(b)(6)").

Further, though pro se complaints are liberally construed, *Douglas v. Yates*, 535 F.3d 1316, 1320 (11th Cir. 2008), a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"

6

*Leonard v. F.B.I.*, 405 F. App'x 386, 387 (11th Cir. Dec. 14, 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court is under no duty to "re-write" a pro se plaintiff's complaint to find a claim. *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993); *see also Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. Jan. 9, 2008) (holding that leniency in construing pro se pleadings "does not permit the district court to act as counsel for a party or to rewrite deficient pleadings") (citing *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

### B.  Discussion

Plaintiff filled out the pro se "Employment Discrimination Complaint Form," alleging discrimination and retaliation, in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* (Doc. 1-1 at 1, 4-10.) He checked the lines indicating that the complained of conduct is based on his race or color (Asian/Bhutanese), and his sex (male), and he also later stated that the conduct was based on "race, color, national origin[.]"  Plaintiff attaches both the Equal Employment Opportunity Commission (EEOC) charge he filed on March 26, 2025, and the EEOC right-to-sue notice, which was issued on September 4, 2025. (Doc. 1-1 at 4, 12-19); *see also* Fed. R. Civ. P. 10(c) ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

Plaintiff alleges that the discriminatory and retaliatory conduct occurred between February 2024 and October 9, 2024, when his employment was terminated after he made protected complaints. (Doc. 1-1 at 4, 7-8.) Plaintiff further alleges the following facts:

Plaintiff relocated from Pennsylvania to Georgia in October 2023 to begin the job as a CAD Engineer. (*Id.* at 7.) Plaintiff was fully qualified and certified, performed at a high level, and never received any warnings, discipline, or notice of performance concerns. (*Id.*) Beginning in February 2024, Plaintiff was subjected to discriminatory treatment, including "an aggressive and humiliating incident" with Production Manager Matthew Coward, which frightened Plaintiff, and he never saw Coward treat any other employee that way. (*Id.*) Plaintiff reported the incident to his supervisor, but after he reported the discrimination, he began to be treated differently, and when Plaintiff informed his supervisor of that treatment/retaliation, he was told "If you don't like it, you can leave." (*Id.*) Throughout 2024, Plaintiff experienced multiple forms of unequal treatment and microaggressions, including a "discriminatory kitchen message sent by coworker Brittany," which Plaintiff reported to Human Resources (HR), but HR took no action. (*Id.*) Plaintiff was also excluded from weekly design meetings and CAD trainings that all other CAD Engineers attended, and Plaintiff was singled out in August 2024 when HR reprimanded Plaintiff for taking an emergency call about his mother, though other employees routinely took personal calls without consequence. (*Id.* at 8.) On October 8, 2024, Plaintiff made another complaint to his supervisor about discrimination and retaliation, and he was told a resolution meeting would be scheduled for the next morning. (*Id.*) Instead, Plaintiff's employment was terminated the next day, on October 9, 2024—less than 24 hours after his protected complaint. (*Id.*) During the termination meeting, management said that there was "no reason in

8

particular" for firing Plaintiff, and that Plaintiff was "not a good fit." (*Id.*) Plaintiff's separation letter, however, claimed "misconduct," and the Georgia DOL (Department of Labor) was told the reason was "lack of work caused by inability." (*Id.*) The three different explanations, according to Plaintiff, show pretext. (*Id.*) The company also failed to follow its own written policies requiring investigations, equal treatment, and progressive discipline. (*Id.*) After Plaintiff was terminated, the company also refused to provide its EIN so that Plaintiff could file for unemployment benefits, which was further retaliation and harmed Plaintiff. (*Id.*)

The Court finds that Plaintiff's complaint alleges non-frivolous Title VII claims that are sufficient to put Defendants on notice of what Plaintiff is claiming and allow Defendants to formulate a defense. (Doc. 1-1). The Court also finds that Plaintiff has sufficiently alleged that he exhausted his Title VII claims at the administrative level. That is, Plaintiff filed the EEOC charge within 180 days of his employment termination on October 9, 2024, and he initiated this lawsuit within 90 days of the issue date on the right-to-sue notice. (Doc. 1-1 at 12-19); *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (explaining that employees must file an EEOC charge within 180 days of the date of the last alleged unlawful act); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (explaining that for an EEOC charge of discrimination to be timely in a non-deferral state such as Georgia, it must be filed within 180 days of the last discriminatory act); *see also Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) (discussing settled law that plaintiffs must file a lawsuit alleging

Title VII claims within 90 days of receiving the EEOC right-to-sue notice). Accordingly, Plaintiff's complaint against Defendants **SHALL PROCEED** like any other civil action.

### III.  CONCLUSION

For the above reasons, Plaintiff's IFP application, (Doc. 1), is **GRANTED**. Further, Plaintiff's complaint against Defendants, (Doc. 1-1), survives frivolity review, and it **SHALL PROCEED** like any other civil action. Instructions directing service will be provided in a separate order.

**SO ORDERED** January 26, 2026.

_____
J. ELIZABETH McBATH
UNITED STATES MAGISTRATE JUDGE

10